AO 91 (Rev. 11/11)  Criminal Complaint

AUSA: Patrick Suter  Telephone: (202) 679-1430
Special Agent: Matthew Sluss  Telephone: (313) 919-1327

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
**ANTONIO GEORGE**

Case No. Case: 2:20−mj−30340
Assigned To : Unassigned
Assign. Date : 8/28/2020
USA V. SEALED MATTER (CMP)(CMC)

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  4/19/2020 - 7/25/2020  in the county of  Wayne  in the  Eastern  District of  Michigan , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1343 | Wire Fraud |

This criminal complaint is based on these facts:
See Attached Affidavit.

☐ Continued on the attached sheet.

_____
Complainant's signature

Matthew Sluss, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: August 28, 2020

_____
Judge's signature

City and state: Detroit, Michang

R, Steven Whalen
*Printed name and title*

Save  Print

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Matthew Sluss, Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I have been employed by the FBI as a Special Agent since September 2017. During my employment with the FBI, I have investigated federal crimes including mail fraud, wire fraud, bank fraud, bankruptcy fraud, and various other criminal matters. At all times during the investigation described in this affidavit, I have been acting in an official capacity as a Special Agent of the FBI.

3. This affidavit is made in support of a criminal complaint and arrest warrant for ANTONIO GEORGE for violating 18 U.S.C. §1343.

4. This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant; therefore, this affidavit does not contain every fact that I have learned during the course of the investigation. I have only set forth the facts necessary to establish probable cause to believe that GEORGE violated the statute identified above. The information contained in this affidavit is based upon my

1

personal knowledge, training and experience, as well as the combined knowledge, training and experience of other law enforcement officers and agents with whom I have had discussions.

5.     18 U.S.C. §1343 criminalizes schemes or artifices to defraud, or obtaining money or property by means of false or fraudulent pretenses, representations, or promises, when for the purpose of executing the scheme, the person transmits, or causes to be transmitted, any writings, signs, signals, pictures, or sounds by means of wire communication in interstate commerce.

## BACKGROUND OF THE PAYCHECK PROTECTION PROGRAM

6.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

7.     In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to

acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

8.   A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

9.   PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

## BACKGROUND OF ECONOMIC INJURY DISASTER LOANS

10. The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

11. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance is determined by the number of employees the applicant certifies having. The advances do not have to be repaid.

12. In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

13. EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application is approved, is determined based, in part, on the

information provided in the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the Paycheck Protection Program, the EIDL funds cannot be used for the same purpose as the Paycheck Protection Program funds.

## **PROBABLE CAUSE**

14. In or around June 2020, a representative of Citizens Bank informed the FBI that several businesses applied for PPP loans that were flagged by the bank's underwriting team because the financial documents provided with the loan applications appeared similar.

15. Subsequent investigative activities conducted by the FBI and SBA identified PPP and EIDL loan applications that appeared connected either by being supported with identical or similar documentation or by having a nexus to GEORGE. In total, 19 loan applications for $3,118,442, of which 16 were for PPP loans for a total of $2,668,442, and 3 were for EIDL loans for a total of $450,000, were identified, as follows (Figure 1):

5

| LOAN DATE | LOAN TYPE | ENTITY NAME | LOAN AMOUNT | FUNDING INSTITUTION | APPLICANT'S NAME |
|---|---|---|---|---|---|
| 04/19/2020 | PPP | ATX INC | $247,900.00 | Citizens Bank | B.O. |
| 04/19/2020 | PPP | DXX Enterprise, LLC | $217,983.00 | Fifth Third Bank | Antonio George |
| 04/29/2020 | PPP | SFX Transportation.INC | $206,100.00 | Citizens Bank | A.O. |
| 04/29/2020 | PPP | Seven Investment Group, LLC | $192,140.00 | Fifth Third Bank | Antonio George |
| 05/02/2020 | PPP | Cabrejas Renovations LLC | $69,800.00 | Citizens Bank | S.V. |
| 05/02/2020 | PPP | The Kongo Enterprise | $198,100.00 | Citizens Bank | A.O. |
| 05/07/2020 | PPP | The Tax Wolf LLC | $69,300.00 | Citizens Bank | Antonio George |
| 05/15/2020 | PPP | Diva Nails & Spa III LLC | $193,700.00 | Citizens Bank | J.H. |
| 05/15/2020 | PPP | Orcas Inc | $111,100.00 | Citizens Bank (Not Funded) | F.G. |
| 05/16/2020 | PPP | S & V Alliance LLC | $72,100.00 | Citizens Bank | S.V. |
| 05/20/2020 | PPP | Express Property Preservation LLC | $217,600.00 | Citizens Bank (Not Funded) | U.D. |
| 06/01/2020 | PPP | Bless My Grind LLC | $195,383.00 | Kabbage, Inc. | K.W. |
| 06/03/2020 | PPP | Cercle Interieur Inc. | $195,383.00 | Kabbage, Inc. | F.G. |
| 06/03/2020 | PPP | The Black Wolf Inc. | $195,383.00 | Kabbage, Inc. | A.S. |
| 06/08/2020 | PPP | Defined Jewelry Inc | $197,000.00 | Citizens Bank | A.S. |
| 06/25/2020 | EIDL | DXX Enterprise LLC | $150,000.00 | SBA | Antonio George |
| 06/25/2020 | EIDL | AMG Solutions LLC | $150,000.00 | SBA | Antonio George |
| 07/15/2020 | EIDL | The Tax Wolf LLC | $150,000.00 | SBA | Antonio George |
| 07/25/2020 | PPP | AMG Solutions, LLC | $89,470.00 | Cross River Bank | Antonio George |

16. GEORGE was a paid employee of ATX Inc., a co-signer on the ATX Inc. deposit account that received the loan funds, and was listed as ATX Inc.'s Treasurer, Secretary, and a Director. GEORGE was the loan applicant and listed as the business registrant for DXX Enterprise, LLC; Seven Investment Group, LLC;

6

and the Tax Wolf LLC. GEORGE was a co-signer on the deposit account that received the loan funds for SFX Transportation Inc.; Cabrejas Renovations LLC; AMG Solutions LLC; and Express Property Preservation LLC. GEORGE was listed as the business registrant and was a co-signer on the deposit account that received the loan funds for The Black Wolf Inc.; Orcas Inc; and Defined Jewelry Inc. GEORGE was listed as a member and was a co-signer of the deposit account that received the loan funds for the Kongo Enterprise. GEORGE was listed as the president, treasurer, and was a co-signer on the deposit account that received the loan funds for Cercle Interieur Inc.

17. The investigation revealed that identical wage information and employee counts was used in support of several of the PPP and EIDL loan applications submitted by the entities listed in Figure 1. The entities discussed below are examples but not an exclusive list.

## ATX INC.

18. Your affiant reviewed loan and financial documents provided by Citizens Bank pertaining to ATX Inc. and noted a PPP loan application was submitted to Citizens Bank to obtain $247,900 in PPP funds for ATX Inc. The signing name on the application was B.O., which was signed on or about April 19, 2020. The corporation's address was provided as 24056 Pilgrim, Redford, Michigan.

7

19. The loan amount of $247,900 was funded to Citizens Bank account x0536 on or about April 20, 2020. GEORGE and B.O. were the signers on the account.

20. Documents provided with the loan application to Citizens Bank included ATX Inc.'s 2019 Form 940, 2019 Forms 941 for each quarter of 2019, and Monthly Payroll Cost report spanning March 2019 through February 2020. The Monthly Payroll Cost report states "the information in this report is derived from ADP's systems and records"; the report is timestamped as generated on April 8, 2020 at 1:23 PM. Your affiant has summarized the information provided in the supporting documents as (Figures 2 & 3, respectively):

| FORM / FIELD | INPUT |
| --- | --- |
| 2019 Form 940 Total Paid to all employees | $899,692.57 |
| 1Q19 Form 941 Number of Employees | 41 |
| 1Q19 Form 941 Wages | $129,657.50 |
| 2Q19 Form 941 Number of Employees | 42 |
| 2Q19 Form 941 Wages | $153,302.50 |
| 3Q19 Form 941 Number of Employees | 57 |
| 3Q19 Form 941 Wages | $215,511.40 |
| 4Q19 Form 941 Number of Employees | 83 |
| 4Q19 Form 941 Wages | $401,221.17 |

| MONTHLY PAYROLL COST REPORT | | | | | | |
|---|---|---|---|---|---|---|
| Month | Gross Pay | Gross Pay in Excess of $100K | SBA Gross Pay | Employer Taxes State and Local | Employer Benefit Cost | SBA Payroll Cost |
| Mar-19 | 47,662.50 | - | 47,662.50 | 1,286.89 | - | 48,949.39 |
| Apr-19 | 47,000.00 | - | 47,000.00 | 1,725.42 | - | 48,725.42 |
| May-19 | 62,308.50 | - | 62,308.50 | 1,829.47 | - | 64,137.97 |
| Jun-19 | 43,994.00 | - | 43,994.00 | 1,084.60 | - | 45,078.60 |
| Jul-19 | 63,919.00 | - | 63,919.00 | 1,717.20 | - | 65,636.20 |
| Aug-19 | 87,904.22 | - | 87,904.22 | 2,509.82 | - | 90,414.04 |
| Sep-19 | 63,688.18 | - | 63,688.18 | 1,674.13 | - | 65,362.31 |
| Oct-19 | 99,288.45 | - | 99,288.45 | 2,498.25 | - | 101,786.70 |
| Nov-19 | 161,041.34 | - | 161,041.34 | 3,234.12 | 700.00 | 164,975.46 |
| Dec-19 | 140,891.38 | - | 140,891.38 | 2,865.09 | - | 143,756.47 |
| Jan-20 | 108,707.85 | - | 108,707.85 | 4,196.12 | - | 112,903.97 |
| Feb-20 | 91,071.75 | - | 91,071.75 | 3,515.37 | - | 94,587.12 |
| Grand Totals | | | | | | |
| Total | 1,017,477.17 | - | 1,017,477.17 | 28,136.47 | 700.00 | 1,046,313.64 |
| Average | | | | | | 87,192.80 |

21. Your affiant reviewed documentation provided by the State of Michigan Unemployment Insurance Agency and noted that ATX Inc. reported Gross Wages and Employee count for each quarter of 2019 as follows (Figure 4):

| FIELD | INPUT |
|---|---|
| 1Q19 Number of Employees | 41 |
| 1Q19 Wages | $129,657.50 |
| 2Q19 Number of Employees | 42 |
| 2Q19 Wages | $153,302.50 |
| 3Q19 Number of Employees | 57 |
| 3Q19 Wages | $215,511.40 |
| 4Q19 Number of Employees | 83 |
| 4Q19 Wages | $401,221.17 |

22. As such, your affiant notes that the ATX Inc. documentation submitted in support of its PPP loan application to Citizens Bank appeared consistent with information submitted to the State of Michigan Unemployment Insurance Agency.

23. The investigation revealed that GEORGE appeared to be the registered Treasurer, Secretary, and Director of ATX Inc. GEORGE received wages from ATX

Inc. in the last quarter of 2019 and first quarter of 2020, and GEORGE was a co-signer on an ATX Inc. bank account.

## **SEVEN INVESTMENT GROUP, LLC**

24. Your affiant reviewed loan and financial documents provided by Fifth Third Bank pertaining SEVEN INVESTMENT GROUP, LLC (SIG) and noted a PPP loan application was submitted to Fifth Third Bank to obtain $192,140 in PPP funds for SIG. The signing name on the application was ANTONIO GEORGE. The corporation's address was provided as 16931 W 10 Mile Rd, Southfield, MI.

25. The loan was dated April 29, 2020, and the loan amount of $192,140 was funded to Fifth Third Bank account x3765.

26. Documents provided with the loan application to Fifth Third Bank included SIG's 2019 Form 940, 2019 Forms 941 for each quarter of 2019, and Monthly Payroll Cost report spanning January 2019 through December 2019. The Monthly Payroll Cost report states "the information in this report is derived from ADP's systems and records"; the report is timestamped as generated on April 16, 2020 at 1:16 PM. Your affiant has summarized the information provided in the supporting documents as (Figures 5 & 6, respectively):

| FORM / FIELD | INPUT |
|---|---|
| 2019 Form 940 Total Paid to all employees | $899,692.57 |
| 1Q19 Form 941 Number of Employees | 41 |
| 1Q19 Form 941 Wages | $129,657.50 |
| 2Q19 Form 941 Number of Employees | 42 |
| 2Q19 Form 941 Wages | $153,302.50 |
| 3Q19 Form 941 Number of Employees | 57 |
| 3Q19 Form 941 Wages | $215,511.40 |
| 4Q19 Form 941 Number of Employees | 83 |
| 4Q19 Form 941 Wages | $401,221.17 |

| MONTHLY PAYROLL COST REPORT | | | | | | |
|---|---|---|---|---|---|---|
| Month | Gross Pay | Gross Pay in Excess of $100K | SBA Gross Pay | Employer Taxes State and Local | Employer Benefit Cost | SBA Payroll Cost |
| Jan-19 | 55,657.50 | - | 55,657.50 | 1,502.75 | - | 57,160.25 |
| Feb-19 | 28,637.50 | - | 28,637.50 | 658.11 | - | 29,295.61 |
| Mar-19 | 45,362.50 | - | 45,362.50 | 1,285.89 | - | 46,648.39 |
| Apr-19 | 43,000.00 | - | 43,000.00 | 1,729.42 | - | 44,729.42 |
| May-19 | 60,308.50 | - | 60,308.50 | 1,829.47 | - | 62,137.97 |
| Jun-19 | 45,994.00 | - | 45,994.00 | 1,080.60 | - | 47,074.60 |
| Jul-19 | 60,919.00 | - | 60,919.00 | 1,719.20 | - | 62,638.20 |
| Aug-19 | 90,904.22 | - | 90,904.22 | 2,507.82 | - | 93,412.04 |
| Sep-19 | 65,688.18 | - | 65,688.18 | 1,678.13 | - | 67,366.31 |
| Oct-19 | 106,288.45 | - | 106,288.45 | 2,494.25 | - | 108,782.70 |
| Nov-19 | 159,041.34 | - | 159,041.34 | 3,239.12 | - | 162,280.46 |
| Dec-19 | 137,891.38 | - | 137,891.38 | 2,860.09 | - | 140,751.47 |
| Grand Totals | | | | | | |
| Total | 899,692.57 | - | 899,692.57 | 22,584.85 | - | 922,977.42 |
| Average | | | | | | 76,856.45 |

27.  It is noted that Figures 2 and 5 are identical because the exact same wage information and employee counts that were submitted for the ATX Inc. PPP loan was submitted in application of the SIG PPP loan. Further, characters in red in Figure 6 are identical to the respective characters in Figure 3, demonstrating the similarities between the Monthly Payroll Cost Report submitted for the ATX Inc. PPP loan compared to the SIG PPP loan submission.

28.  Your affiant reviewed documentation provided by the State of Michigan Unemployment Insurance Agency and noted that a Notice of Change form

11

was submitted for SIG on March 21, 2018, signed by GEORGE. The form indicated the reason for discontinuance or transfer for payroll or assets in whole or part was no employees, the last date of payroll was October 31, 2015, and all employment in Michigan was discontinued. There were not subsequent Notice of Change forms provided and no quarterly wage report information.

29. Your affiant observed that SIG's business address of 16931 W 10 Mile Rd, Southfield, MI displayed signage that read "United Denture Clinic." No signage for SIG was observed at the address.

30. The investigation revealed that GEORGE is a member of SIG and is listed as its registered agent.

## CONCLUSION

31. Your affiant submits that there is probable cause to believe that GEORGE devised and perpetrated a scheme or artifice to defraud Financial Institutions. In furtherance of and to execute this scheme, GEORGE sent an electronic loan application and other writings, signs, signals, and pictures in interstate commerce by means of wire communication, as set forth above.

32. Therefore, your Affiant believes that probable cause exists that ANTONIO GEORGE violated 18 U.S.C. §1343 (wire fraud).

MATTHEW SLUSS
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence and/or reliable electronic means on this 28th day of August 2020.

Hon. R. Steven Whalen
United States Magistrate Judge
Eastern District of Michigan